**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CAL DATA SYSTEMS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-1390 |
| | § | |
| NCS PEARSON, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Cal Data Systems, Inc. sued NCS Pearson, Inc. d/b/a Pearson School Systems in state court, alleging breach of contract. Pearson timely removed the suit to federal court on the basis of diversity jurisdiction. (Docket Entry No. 1). Pearson counterclaimed for fraud, negligent misrepresentation, and breach of contract, (Docket Entry No. 4). Capital Bank, a secured creditor of Cal Data, moved to intervene. (Docket Entry No. 15). Pearson has responded, opposing the intervention, (Docket Entry No. 19), and Capital Bank has replied, (Docket Entry No. 20). Capital Bank has moved for expedited consideration of its motion to intervene and to compel mediation. (Docket Entry No. 22). Pearson has responded. (Docket Entry No. 23).

Based on the motions, responses, and replies and the applicable law, this court denies Capital Bank's motion to intervene. Capital Bank's motion for expedited consideration and to compel mediation are denied as moot. The reasons are explained below.

**I.      Background**

Cal Data is a Texas corporation that provides a variety of computer- and software-related services, including software and systems consulting for business and government agencies. Pearson is a Minnesota corporation that sells school administrators software for managing student information and performance data. In 2005, Cal Data and Pearson entered into three contracts under which Cal Data was to develop software for Pearson and Pearson was to use and distribute Cal Data software. The three contracts are identified as the Benchmark Contract, dated July 7, 2005; the SASI Contract, dated October 4, 2005; and the Software Distribution Agreement, dated October 19, 2005. (Docket Entry No. 1, Ex. B, Attachments A, B, C).

Pearson canceled the SASI Contract on May 10, 2006. The parties dispute the reason for the cancellation. Cal Data asserts that Pearson "elected to forgo continued development of a centralized database for its older SASI product" and owes more than $250,000 for work Cal Data performed under the SASI Contract. (Docket Entry No. 1, Ex. B at 4). Pearson alleges that "Cal Data failed to develop and deliver" the software contemplated under that contract. (Docket Entry No. 19 at 4). Pearson argues that Cal Data has failed to refund the $275,000 paid for the SASI Contract. Pearson further contends that Cal Data failed to comply with the Benchmark Contract by refusing to fix defects in the software that it had provided and failed to comply with the Software Distribution Agreement by refusing to pay Pearson licensing fees owed under that agreement.

On March 20, 2007, Cal Data sued Pearson in Texas state court, alleging breach of contract and seeking fees allegedly owed under the parties' agreements. Pearson timely

removed on April 23, 2007 and counterclaimed for breach of contract on April 26, seeking damages caused by Cal Data's defective software. On May 14, 2007, Cal Data filed for bankruptcy protection under chapter 7 of the Bankruptcy Code. The parties jointly filed a motion to stay this litigation on July 29, 2007, which this court granted. The bankruptcy court appointed a trustee and authorized the trustee to litigate this action on behalf of Cal Data. The bankruptcy court subsequently lifted the stay on Cal Data's claims and Pearson's counterclaims. (Docket Entry No. 13, Exs. A, B).

Cal Data signed two promissory notes issued by Capital Bank in July 2006 and March 2007. The bankruptcy court found that Capital Bank "holds a valid blanket first lien in all of the accounts, rights to payment, furniture, fixtures, equipment, inventory and general intangibles of Cal Data Systems, Inc." (Docket Entry No. 19, Ex. A at 1). The bankruptcy court lifted the automatic stay imposed by 11 U.S.C. § 362 and allowed Capital Bank to "take possession of the Property, except the Pearson litigation, and sell . . . such property and imply any proceeds to its indebtedness." (*Id.*, Ex. A at 2). The bankruptcy court also modified the stay to allow Capital Bank to move to intervene and take other action with respect to this litigation. (*Id.*, Ex. A at 2).

In this court, Capital Bank has moved to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2). (Docket Entry No. 15 at 3). Capital Bank argues that it timely moved to intervene, that its intervention will not prejudice the parties, and that its interest "may not be protected if it is not allowed to intervene." (*Id.* at 4). Pearson opposes the intervention on the grounds that Capital Bank has no interest in the pending case, the

3

trustee will adequately protect Capital Bank's interest, and resolution of this case action will not impair Capital Bank's legal rights.

Each argument and response is analyzed below.

## II.    The Legal Standard

Rule 24 provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
>> (1) is given an unconditional right to intervene by a federal statute; or
>>
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
>
>> (1) In General. On timely motion, the court may permit anyone to intervene who:
>>
>>> (A) is given a conditional right to intervene by a federal statute; or
>>>
>>> (B) has a claim or defense that shares with the main action a common question of law or fact.

FED. R. CIV. P. 24. The courts have interpreted Rule 24(a)(2) to require that: (1) the intervention application must be timely; (2) the applicant must have an interest relating to the property that is the subject of the action; (3) the applicant must be so situated that the

4

disposition may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties. *Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir.1997) (citing *Sierra Club v. Glickman*, 82 F.3d 106, 108 (5th Cir.1996)).

"Rule 24(b)(2) provides for permissive intervention when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n. 2 (5th Cir.1989). District courts considering whether to permit intervention should also consider whether the would-be intervenor is adequately represented by the existing parties and whether the intervenor's presence is likely to make a significant contribution to the development of the underlying factual issues. *Id.* at 189. While the discretion of district courts in granting motions to permissively intervene is wide, intervention should be allowed "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir.1970)); *Clements*, 884 F.2d at 189.

### III.   Analysis

To intervene as of right under Rule 24(a)(2), the applicant must "point to an interest that is 'direct, substantial, and legally protectable." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452,

5

463 (5th Cir. 1984)) (internal punctuation omitted). "This requires a showing of something more than a mere economic interest; rather the interest must be 'one which the substantive law recognizes as belonging to or being owned by the applicant.'" *Id.* (quoting *United Gas Pipe Line*, 732 F.2d at 464). The potential intervenor must have an interest "that is related to the property or transaction that forms the basis of the controversy." *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004) (citing *Doe v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001)). Capital Bank has failed to show more than an economic interest in this litigation. Capital Bank's lien on Cal Data's accounts receivable and general intangibles arises from two promissory notes unrelated to the transactions between Cal Data and Pearson at issue in this case. Capital Bank's interest in this action "is in the prospective collectability of a debt." *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004); *see also Hawaii-Pac. Venture Capital Corp. v. H.B. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (holding that the impaired ability to collect judgments that may arise from future claims does not give rise to a right of intervention). Capital Bank has failed to show that it has more than an economic interest relating to the transactions in dispute in this action.[1]

   Capital Bank's motion to intervene is denied.

**IV.   Conclusion**

---

[1] Because Capital Bank's claim in this case is unrelated to the contracts in dispute between Cal Data and Pearson, Capital has failed to meet the requirements for permissive intervention under Rule 24(b)(2). Rule 24(b)(2) provides for permissive intervention only if the intervenor's claim or defense and the main action have a question of law or fact in common

Capital Bank's motion to intervene is denied.  Capital Bank's motion for expedited consideration and to compel mediation are denied as moot. The initial pretrial and scheduling conference is reset to **May 30, 2008, at 8:45 a.m.**, in Courtroom 11-B.

SIGNED on April 10, 2008, at Houston, Texas.

                                    _____
                                                Lee H. Rosenthal
                                         United States District Judge